# LANDMAN CORSI BALLAINE & FORD P.C.

A NEW YORK PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

TIMOTHY J. COLLAZZI
MEMBER
EMAIL: tcollazzi@lcbf.com

ONE GATEWAY CENTER
22ND FLOOR
NEWARK, NJ 07102
TELEPHONE (973) 623-2700
www.lcbf.com

120 Broadway
13th Floor
New York, New York 10271
Tel: (212) 238-4800

One Penn Center
1617 JFK Boulevard
Philadelphia, PA 19103
Tel: (215) 561-8540

April 28, 2025

*Via ECF*
Judge James B. Clark III, U.S.D.J.
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & US Courthouse
50 Walnut Street
Newark, New Jersey 07101

> Re:  **National Railroad Passenger Corporation vs. Vinik Marine, Inc., et al.**
>      **Docket No. 2:24-cv-04874-MCA-SCM**

Dear Judge Clark:

This office represents Plaintiff National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") in the above-referenced matter. We write to respectfully request permission to file a motion to preclude Defendants Vinik Marine Services, LLC and Vinik Marine, Inc. ("Defendants") from testifying regarding subjects on which they failed to produce a witness competent to testify pursuant to Fed. R. Civ. P. 30(b)(6), or, in the alternative, to compel them to produce a witness within 30 days that is prepared to testify regarding the subjects, as described below.

**A. Background**

On January 29, 2025, Amtrak noticed two depositions: (1) Michael Vinik, the captain of the vessel at issue in this claim, for February 7, 2025; and (2) Defendants' deposition pursuant to Fed. R. Civ. P 30(b)(6), for February 20, 2025. Amtrak noticed depositions for these dates mindful of the fact discovery deadline, the time it takes to obtain a transcript from a deposition, the time to which Defendants are entitled to read and sign the transcript, and the deadline for its expert disclosures. However, on February 5, 2025, Defendants advised that they could not produce a witness on those dates and advised Captain Vinik was "involved in planning the towage of the SS United States" and "the actual towage is expected to take four to six weeks and may commence before the end of the month" and that they expected to "have more details" regarding his availability "no later than early next week." Having heard nothing from Defendants, the undersigned followed up on February 18, 2025, to request dates. Though Defendants' counsel responded to the undersigned's February 18, 2025 email, he ignored the request for dates for Captain Vinik's deposition.

On February 21, 2025, in response to additional follow up regarding Captain Vinik's availability, Defendants' counsel advised that he had left on an out-of-state voyage and expected him to "have returned and be available for deposition after March 17, 202[5]," and, in fact, Captain Vinik departed for his journey on February 15, 2025, and returned on March 15, 2025. Based on counsel's representation that Mr. Vinik would be available after March 17, 2025, Plaintiff re-noticed the depositions for March 18, 2025 and March 27, 2025. On Friday, March 14, 2025, at 7:15 p.m., Defendants advised that Captain Vinik "is returning with barges from his voyage" and that "[a]ccordingly, we will require an adjournment of his depositions."[1] Eventually, after Amtrak requested a meet-and-confer, Defendants' agreed to produce a 30(b)(6) witness (Mr. Vinik, in his official capacity) on April 2, 2025 and Mr. Vinik (in his personal capacity) on April 11, 2025. In short, due to Defendants' schedule, Amtrak was deprived of *two months* of opportunity to complete follow-up investigation and is now forced to file this letter on the eve of the discovery end date.

### B. Defendants' Rule 30(b)(6) Testimony

Defendants' representative was inadequately prepared to testify pursuant to Rule 30(b)(6) and Defendants' counsel refused to allow him to answer questions on certain subjects though Defendants had not previously objected to scope of the 30(b)(6) notice. On April 28, 2025, the parties met and conferred on this subject, and Defendants advised that they believed the witnes was adequately prepared and, accordingly, they were unwilling to compromise.

First, a party testifying under Rule 30(b)(6) cannot refuse to answer a question about facts underlying his answer or his responses to interrogatories because he learned the facts from his attorneys. A Rule 30(b)(6) must provide responsive underlying factual information, even though such information was transmitted through an organization's attorneys. *See*, *e.g*. Damarr-Faruq v. City of Pleasantville Police Dep't, Docket No. 1:21-cv-11866-KMW-EAP, 2023 WL 3996952, at *2 (D.N.J. June 13, 2023) (citing Sprint Comm's Co., L.P. v. Theglobe.com, Inc., 236 F.R.D. 524, 529 (D. Kan. 2006)). Defendant refused to answer or incompletely answered the following questions because he had learned the underlying facts from his attorney:
.
- "Deflect and straighten the bow of the Maria. What do you mean by that?"[2] See 171:5-7.
- "[Y]our second affirmative defense, what's the basis for the claim that you're entitled to exoneration under the Limitation of Vessel Owners' Liability Act of 1851?"[3] See 174:23-175:1
- What's the basis for your claim that Amtrak's injuries were caused by the fault and/or neglect of third parties?[4] See 175:15-17.

---

[1] Mr. Vinik admitted during his personal deposition that he had returned from his voyage on March 15, 2025, so it is unclear why he was unable to appear on March 18, 2025.

[2] This question sought "facts underlying . . . *your answer to the complaint*," part of Topic 1 from the notice.

[3] This question sought "facts underlying . . . any affirmative defenses," part of Topic 1 from the notice.

[4] This question sought "facts underlying . . . any affirmative defenses," part of Topic 1 from the notice.

- Are you aware of any third parties that would be responsible for this incident?[5] See 176:1-2.
- What's the basis for your claim that Amtrak sustained no damages as a result of the allegations set forth in the complaint?[6] See 176:7-12.
- Destruction of any property alleged by Plaintiff was done, occasioned or incurred without the privity or knowledge of the defendants. What's the basis for that claim?[7] See 184:6-10.

Thus, because of Defendants' and its counsel's obstructionist behavior, Amtrak was unable to learn any information about Defendants' affirmative defenses or certain of its responses to interrogatories. Given that there is no one more knowledgeable than Mr. Vinik regarding the above subjects, and Defendants have produced no documents that answer these questions, Amtrak has no discovery tools at its disposal to understand the defenses for which it is required to prepare, making certain Defendants will be able to try this suit by ambush.[8] If, for example, Defendants intend to point the finger at an unknown third-party that they have yet to identify, Amtrak has no mechanism for discovering or preparing for that defense.

Further, Defendants were required to produce a knowledgeable witness who was prepared to testify on the subjects listed on the notice attached hereto as **Exhibit A**. As mentioned above, Defendants did not object to the subjects listed and rejected Amtrak's offer to meet and confer pursuant to Rule 30(b)(6). In addition to the above subjects, by way of example, Mr. Vinik was not prepared to testify on the following subjects:

**Defendants' responses to Amtrak's interrogatories and requests for documents (Topic 2)**. Examples include:
- Mr. Vinik was unable to explain the facts on which he relied to support his claim that any "destruction of any property alleged by plaintiff was done, occasioned or incurred without the privity or knowledge of defendants." See 184:6-185:23
- Mr. Vinik was unable to explain what Defendants meant by their claim that "damages were caused or contributed to by . . . those over whom plaintiff had control." See 187:16-21.
- Mr. Vinik could not testify as to why he did not list Michael Sonta as a witness to support his claims when responding to Plaintiff's interrogatories. See 166:7-25; see also fn. 8).
- Mr. Vinik was not prepared to testify as to the basis for Defendants' belief that Amtrak's fender systems exists to assist vessels while transiting through the waterway. See 183:2-8.
- Mr. Vinik was not prepared to testify as to whether Defendants searched for emails responsive to Amtrak's document requests until coached by his counsel. See 191:12-192:25.

---

[5] Same.

[6] Same.

[7] Same.

[8] For example, Defendants admitted he was aware of a witness who is purportedly familiar with the pre-existing condition of the fender (which would clearly be relevant to the Defendants' apparent defense that the fender's condition—and not having been struck by thousands of tons of fast-moving steel and sludge—caused the accident), but did not disclose him. When asked why Defendants had not disclosed the witness and when Defendants had discovered the witness, counsel interjected, attempting (unsuccessfully) to coach the witness to testify that the witness was for the purpose of "the impeachment of an Amtrak witness."

- Mr. Vinik was not prepared to testify regarding the dimensions or characteristics of the Liz Vinik. See 128:16-130:25.
- Mr. Vinik was not prepared to testify as to whether Defendants' insurance coverage was subject to a reservation of rights. See 158:24-159:5.

**Defendants' record retention policies (Topic 4).** Examples include:

- Mr. Vinik was not prepared to testify regarding Defendants' maintenance of Defendants' payroll records; he did not know whether Defendants have payroll records related to an eyewitness, could not testify as to the length of time payroll records are maintained, and did not remember whether he prepared to discuss his retention policy for payroll records. See 204:7-25; 205:7-14.
- Mr. Vinik was unable to testify as to how the Defendant entities are related or organized and directed counsel to contact Defendants' accountant. See 71:24-72:12.
- Mr. Vinik testified that he could not recall whether he maintained the text message communications between him and the bridge tender on April 16, 2022. See 40:5-7.
- Mr. Vinik testified that he did not know whether cell phone data pertaining to Defendants is backed up to iCloud. See 40:22-42:4
- Mr. Vinik was unable to testify as to how many people Defendants employed in April of 2022, nor how many of them were qualified to operate tugboats. See 213:10-11
- Mr. Vinik was unable to testify as to whether Defendants generated an incident report or a logbook entry when he struck a different bridge's fendering system in the Hackensack River. See 98:15-23.
- Mr. Vinik could not testify to whether Defendants keep disciplinary files for employees. See 238:12-16.

**Defendants' policies, procedures, or practices (Topic 8).** For example, he could not competently testify regarding:

- Defendants' accident or incident policies in effect in 2022. See 27:24-28:8.
- Defendants' policy for responding to an allision. See 28:19-29:21
- Details of Defendants' safety management system in effect in 2022. See 25:8-29:21.

    For the reasons above, we respectfully request the Court enter an order permitting Amtrak to file a motion to preclude Defendants' testimony on certain subjects, to be described more thoroughly in Amtrak's motion, or, in the alternative, compel a second deposition at which Amtrak can explore the issues Defendants' counsel directed its representative not to answer.

    We thank the Court for its time and attention to this matter.

Very truly yours,

*s/Timothy J. Collazzi*
Timothy J. Collazzi
Rachel S. Rubenstein

# Exhibit A

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATIONAL RAILROAD PASSENGER CORPORATION d/b/a Amtrak,**<br><br>**Plaintiff,**<br><br>v.<br><br>**VINIK MARINE, INC., a corporation, VINIK MARINE SERVICES, LLC, and JOHN DOES 1-10 and ABC Corps 1-10, being the persons, firms, or corporations who owned, operated and/or chartered the LIZ VINIK at the time in question,**<br><br>**Defendant.** | Case No.: 2:24-cv-4874-MCA-JBC<br><br>**AMENDED NOTICE OF <u>DEPOSITION</u>** |

**PLEASE TAKE NOTICE** that on **March 27, 2025, at 11:00 a.m.**, the undersigned attorneys for Plaintiff National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak"), pursuant to Fed. R. Civ. P. 30(b)(6), will take the deposition of the Defendant Vinik Marine, Inc.'s and Defendant Vinik Marine, LLC's employee(s), officer(s), or other representative(s) with the most knowledge concerning the topics set forth below. The deposition(s) will take place at our offices, located at One Gateway Center, 22nd Floor, Newark, NJ 07102, before a person authorized to administer oaths. The Fed. R. Civ. P. 30(b)(6) deponent(s) are to be the employee(s), officer(s), and/or other representative(s) with the most knowledge and/or best information concerning the following subjects:

1. Facts underlying the claims raised in Amtrak's Complaint, your answer to the complaint, and any affirmative defenses.

2. Your responses to Amtrak's interrogatories and requests for production.

4913-1563-8559v.1

3. Your efforts to locate documents and information responsive to Amtrak's interrogatories and requests for production.

4. Your record keeping policies and procedures, including procedures and policies for retaining records.

5. Any bridge transits you made at the Amtrak Portal Bridge between April 16, 2018 and April 16, 2022.

6. Any bridge transits you have made at the Amtrak Portal Bridge since April 16, 2022.

7. Any allisions in which you have been involved since April 16, 2018.

8. Any company policies, procedures, or practices related to:

    a. Preparing for trips involving towing vessels and their tows
    b. Preparing for bridge transits
    c. Training related to operation and control of towing vessels and their tows
    d. Training related to making safe bridge transits
    e. Crewing and managing the crew of vessels
    f. Accident, incident, and allision prevention and reporting
    g. Ensuring compliance with Coast Guard regulations
    h. Recordkeeping regarding safety and training, accident and incident prevention and reporting, and compliance with Coast Guard regulations

9. Communications between you and the Coast Guard regarding the incident on April 16, 2022, including any records reflecting same.

10. Communications between you and any other entity, individual, or organization, other than your attorneys, regarding:

    a. the incident described in the Complaint

    b. Portal Bridge bridge transits you made between April 16, 2018, and the present;

      c.      the project to remove the debris from the Hackensack River after the incident on April 16, 2022;

      d.      the project to replace the Portal Bridge fender system after the incident on April 16, 2022.

11. Hiring policies and procedures, including recruiting practices and posted job qualifications and requirements, for Deck Hand positions at Vinik Marine.

**LANDMAN CORSI BALLAINE & FORD P.C.**
Attorneys for Plaintiff National Railroad Passenger Corporation d/b/ Amtrak

**BY**: */s/ Rachel S. Rubenstein*
      **Rachel S. Rubenstein**

Dated: February 25, 2025